IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LENNI WILKES,

      Plaintiff,            No. CIV S-10-2706 DAD P

   vs.

J. NEPOMUCENO, et al.,        <u>ORDER AND</u>

      Defendants.       <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

      Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Before the court is plaintiff's amended complaint.

**I. Procedural History**

      Plaintiff's original complaint was filed with the court on October 6, 2010, and named defendant Nepomuceno as the sole defendant. On October 21, 2010, the court dismissed the original complaint because plaintiff had failed to allege any facts concerning the involvement of defendant Nepomuceno in a violation of plaintiff's constitutional rights. The court granted plaintiff leave to file an amended complaint curing this deficiency and provided plaintiff with the legal standards governing a claim of inadequate medical care in violation of the Eighth Amendment. Plaintiff filed his amended complaint on November 29, 2010.

/////

1

**II. Plaintiff's Amended Complaint**

In his amended complaint plaintiff names the following medical personnel at High Desert State Prison (HDSP) as defendants: Chief Medical Officer Swingle, Physician's Assistant Marciano, Dr. Lankford, and Chief Surgeon Dr. Nepomuceno.  Therein, plaintiff alleges the following.  On July 26, 2009, plaintiff was taken to the medical treatment center at HDSP where a visual diagnosis determined that he had suffered a bicep tendon tear while participating in a handball tournament.  (Doc. No. 9 at 4 & 8.)  Plaintiff's case was referred to the Medical Authorization Review (MAR) committee, then to the Health Care Review (HCR) committee.  (Id. at 4.)  Plaintiff was told that an M.R.I. would be taken.  (Id.)  Eighteen days later, plaintiff was transported to the Northern Nevada Medical Center (NNMC) where he was told by an orthopedist that because of California's budgetary constraints he "should be taken to the E.R. where adequate medical attention couldn't be denied."  (Id. at 4 & 6.)  Plaintiff asserts that instead of being taken to Redding Medical Center for treatment, he was returned to HDSP.  (Id. at 4 & 6.)  Two days later, plaintiff was taken to Banner Hospital in Susanville where an M.R.I. confirmed that he had a torn bicep.  (Id.)  Plaintiff concedes in his amended complaint that surgery was finally performed on his injury in mid-August 2009, but complains that donor tissue was used to reconnect the bicep tendon to the muscle.  (Id. at 9.)

Plaintiff contends that the prison policy of treating older patients conservatively and the delay in his obtaining surgery has caused him uncertainty as to whether "the repair can withstand the force I can produce to curl . . . [a 50 pound] dumbbell."  (Id. at 8.)  Plaintiff believes that the conservative treatment he received has left him handicapped.  (Id.)

Plaintiff has attached to his amended complaint a copy of the first level response to his inmate appeal concerning the treatment of his injury.  (Id. at 9-10.)  In that response the issue raised by plaintiff in his inmate grievance was described as follows:

> Inmate Wilkes, on appeal you state on July 26, 2009 you suffered a left bicep tendon tear.  You say on August 14, 2009, eighteen days later, you were taken to Reno and told there is a time limit on this

2

> sort of injury to ensure proper healing. You state you were told you were at that point then. You say surgery was performed in mid August 2009. You state you had donor tissue used to reconnect the tendon to the muscle and you are not comfortable with having someone else's body part inside of you. You state you shouldn't have to of had donor tissue as the only option to fix your arm when FNP Miller, PA-C Marciano and a doctor in Reno said you needed to be admitted to the hospital then, not weeks later. You are specifically requesting that CDCR investigate and take immediate disciplinary action against all those responsible in the delay of finding a surgeon and ignoring the advice of HDSP staff. You say you want an attempt to correct physical damage.

(Id. at 9.)

Plaintiff's inmate appeal was granted by defendant Dr. Nepomuceno, Chief Physician and Surgeon at HDSP with respect to plaintiff's request for an investigation of whether he was provided appropriate medical treatment. The response noted that plaintiff was interviewed by defendant Dr. Lankford, who also investigated plaintiff's allegations. (Id.) The response also addressed plaintiff's expressed concern about the type of treatment provided by prison officials based on the patient's age and the alleged harm due to the alleged delay in providing appropriate medical treatment in his case. In this regard, the response to plaintiff's inmate appeal stated:

> You were told that according to Emergency Medicine resources, "Treatment is surgical repair of the tendon in the *young*, athletic patient. The *older* patient can be treated conservatively with immobilization." You fall into the latter category. Evidently Reno Orthopedics refused to accept you as a patient. You[r] tendon tear was repaired by orthopedics in Redding.
>
> You stated you have some decreased strength in the left arm. You most likely would have decreased strength in your left arm regardless of whenever the surgery was completed. You were given a full explanation of the surgery and plan for donor tissue use at the time of your surgery and signed the surgery consent of [sic] your own free will . . . .

(Id.)

/////

/////

3

**III. Screening Requirement**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint. See Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The court must also construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

/////

## IV. Analysis

It is well established that a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the cruel and unusual punishment clause of the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828-29 (1994); Helling v. McKinney, 509 U.S. 25, 31-32 (1993); Wilson v. Seiter, 501 U.S. 294, 302 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). There are an objective and a subjective requirement which must be met for an Eighth Amendment claim. Farmer, 511 U.S. at 834. First, with respect to the objective requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. Second, the prison official must have a sufficiently culpable state of mind. Id. Here, the state of mind required is one of deliberate indifference. Id. A prison official who knows of and disregards an excessive risk to an inmate's health or safety demonstrates deliberate indifference. Farmer, 511 U.S. at 837; see also Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991). Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. However, a prison official who knows of a substantial risk to an inmate's health or safety but acts reasonably under the circumstances will not be held liable under the cruel and unusual punishment clause, even if the threatened harm results. Id. at 843.

### A. Failure to Allege Facts Concerning Defendants' Involvement

Plaintiff was advised in the court's October 21, 2010, order dismissing his original complaint with leave to amend that in any amended complaint he elected to file, he was required to allege in specific terms how each named defendant was involved in the alleged deprivation of his rights. Plaintiff was also advised that there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. (Doc. No. 6 at 5) (citing Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); and Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.

1978)).  Finally, plaintiff was cautioned that vague and conclusory allegations of official participation in civil rights violations are not sufficient.  (Id.) (citing Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

      Nonetheless, in his amended complaint plaintiff has once again failed to set forth any factual allegations concerning how defendants Lankford and Nepomuceno allegedly violated his constitutional rights.  The first level response by prison officials to the inmate grievance, attached to plaintiff's amended complaint, indicates that defendant Lankford interviewed plaintiff when plaintiff submitted his inmate grievance and that defendant Nepomuceno issued a favorable decision in part on that grievance.  (Doc. No. 9 at 9-10.)  However, there are no allegations in plaintiff's amended complaint as to how these defendants allegedly violated his Eighth Amendment right to adequate medical care.  Therefore, defendants Lankford and Nepomuceno should be dismissed from this action.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

      As to defendant Dr. Marciano, in his amended complaint plaintiff merely alleges that prior to the M.R.I. plaintiff received, defendant Marciano stated his belief that plaintiff had a torn bicep and that this suspicion was later confirmed by the M.R.I.  (Doc. No. 9 at 4.)  Again, there are no allegations suggesting that defendant Dr. Marciano was deliberately indifferent to plaintiff's serious medical need.  Rather, the allegations of the amended complaint suggest that defendant Dr. Marciano attempted to take steps to have plaintiff's injury treated as plaintiff contends it should have been treated. Therefore, defendant Marciano should also be dismissed from this action.

      Finally, as to defendant Chief Medical Officer Swingle, plaintiff merely alleges in his amended complaint that all defendants "report to" defendant Swingle.  However, plaintiff has failed to set forth any allegations in his amended complaint suggesting that defendant Swingle was personally involved in any of the medical decisions concerning treatment of plaintiff's torn

6

bicep. (Id. at 3.) Instead, based solely on defendant Swingle's supervisorial position, plaintiff argues that defendant Swingle "knew of my injury, [and] knew it was a serious injury that required prompt and adequate medical attention" but chose a conservative approach to treat plaintiff's injury. (Id. at 5.) However, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Here, the vague and conclusory allegations of plaintiff's amended complaint concerning defendant Swingle's involvement in the alleged violation of plaintiff's rights under the Eighth Amendment are insufficient to support a § 1983 action against that defendant. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**B. Difference of Opinion Regarding Appropriate Medical Treatment**

In his amended complaint plaintiff claims that after his injury, he should have been taken to the emergency hospital so that surgery could be performed immediately rather than approximately one month later.[1] Plaintiff disagrees with the early, conservative course of treatment (immobilization) that was pursued following his injury, rather than an immediate surgical repair of the tendon. Plaintiff's contentions, however, demonstrate at most a mere difference of opinion between himself and the prison medical staff as to proper course of medical treatment for his bicep tear. Such differences in opinion do not rise to a level of an Eighth Amendment claim. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (holding that a difference of opinion does not amount to deliberate indifference to a prisoner's serious medical needs); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir. 1981) ("[W]here a defendant has

---

[1] According to the first level response provided by prison officials to plaintiff's inmate appeal, plaintiff's injury occurred on July 26, 2009, and surgery on his torn bicep was performed in mid-August of 2009. (Doc. No. 9 at 9.)

based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law."). Therefore, the court finds that plaintiff has failed to state a cognizable Eighth Amendment claim for the treatment of his torn bicep.

### C. Delay in Treatment

In his amended complaint plaintiff also claims that because his surgery was delayed, donor tissue had to be used and he is now "handicapped" because he may be unable to curl a fifty-pound dumbbell. (Doc. No. 9 at 8.)

It is true that delay in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. However, to establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must allege and prove that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). See also McGuckin, 974 F.2d at 1060.

Here, plaintiff's allegations of harm are insufficient. In the first level response to his inmate appeal, attached to plaintiff's amended complaint, medical staff concluded that he would have experienced decreased strength in his injured arm, regardless of when his surgery was completed. (Doc. No. 9 at 9.) Moreover, in his amended complaint plaintiff has alleged only that the delay in treatment has caused him personal uncertainty as to whether the repaired bicep will withstand weight lifting activities. In addition, although plaintiff has alleged that he is uncomfortable with the use of donor tissue in the repair of his torn bicep tendon, there is no allegation that the use of donor tissue has been harmful to plaintiff's health. Finally, plaintiff's

amended complaint and attachments thereto reflect that he was informed of the intended use of donor tissue by doctors prior to his surgery and that he nonetheless consented to the surgery. Therefore, the court finds that plaintiff has failed to allege sufficient facts to state a cognizable Eighth Amendment claim based on the claimed delay in providing him with medical treatment for his torn bicep..

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that this case be randomly assigned to a District Judge.

Also, IT IS HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 9, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
wilkes2706.fsc

9